**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| BROAD STREET GLOBAL MANAGEMENT LLC,<br><br>Plaintiff,<br><br>vs.<br><br>STEVEN SCHULMAN, ANKUR ANAND, GREGORY LOVALLO, NIMISH PATEL, AND ROBERT HARPER,<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Broad Street Global Management LLC ("BSGM") complains of Defendants Steven Schulman ("Schulman"), Ankur Anand ("Anand"), Gregory Lovallo ("Lovallo"), Nimish Patel ("Patel") and Robert Harper ("Harper") (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

1. A legal controversy has arisen between BSGM and Defendants that can be effectively resolved by a declaratory judgment.

2. Through this lawsuit, BSGM seeks a declaratory judgment to resolve the controversy.

## PARTIES, JURISDICTION AND VENUE

3. BSGM is a South Carolina limited liability company with its principal place of business in the State of South Carolina. BSGM is the Manager of Broadstreet Global Fund LLC

("BSGF").[1] BSGM is a citizen of the State of South Carolina.

4. Upon information and belief, Schulman is a resident and citizen of the State of New York. Schulman invested money in BSGF.

5. Upon information and belief, Anand is a resident and citizen of the State of New York. Anand invested money in BSGF.

6. Upon information and belief, Lovallo is a resident and citizen of the State of New Jersey. Lovallo invested money in BSGF.

7. Upon information and belief, Patel is a resident and citizen of the State of North Carolina. Patel invested money in BSGF.

8. Upon information and belief, Harper is a resident and citizen of the State of Texas. Harper invested money in BSGF.

9. This Court has subject matter jurisdiction over this declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, which allows federal courts to issue declaratory judgments in cases that present a valid basis for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

10. Diversity jurisdiction over this matter is proper because complete diversity exists between BSGM and Defendants, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants.

12. Venue is proper in this District.

[1] BSGF is a Delaware limited liability company with its principal place of business in the State of South Carolina. BSGF is a private fund. BSGF and BSGM are collectively referred to herein as "Broadstreet".

## <u>FACTUAL ALLEGATIONS</u>

13. As part of the offering material for investment in BSGF, Defendants were provided a Confidential Private Placement Memorandum from BSGF ("PPM") and Operating Agreement.[2]

14. Each of Defendants signed subscription agreements confirming they were accredited investors, that they understood the investment was speculative and involved a high degree of risk and that the investment should only be made with the "risk capital" segment of their investment portfolio.

15. The Operating Agreement and PPM, which Defendants agreed to carefully review as part of their decision to invest in BSGF, contain the following provisions:

i. "The Manager may, in its sole discretion, make distributions in cash or ***<u>in kind</u>***, or in a combination thereof," in connection with a withdrawal of funds . . ." (Operating Agreement, § 6.05) (emphasis added).

ii. "The Manager may, in its sole discretion, terminate all or any part of the Capital Account of any Member at any time for any reason or no reason." (*Id.*, § 6.03).

iii. "The Manager may at any time suspend or restrict the right of any Member to withdraw capital or receive a distribution of the amount being withdrawn from the Company or any Series if, in the Manager's judgment, such suspension or restriction would be in the best interests of the Company or such Series." (*Id.*, § 6.07(b)).

iv. Situations in which such a suspension might occur include, but are not limited to: . . . (ii) when disruptions in investment markets make pricing and/or liquidation of some or all Company or Series assets difficult or would result in losses if the Company or a Series attempted such liquidations. (*Id.*).

v. "[A]ll withdrawals may be modified or paid back ***<u>in kind</u>*** if the Manager so determines it to be in the best interest of the Fund," a determination committed to the sole and absolute discretion of the Manager." (PPM, p.

---

[2] The Limited Liability Company Agreement of Broadstreet Global Fund LLC was amended and restated on May 26, 2022 and again in September 2023. The Limited Liability Company Agreement of BSGF and the aforementioned amendments and restatements are collectively referred to herein as the "Operating Agreement".

11) (emphasis added).

16. On November 14, 2025, Broadstreet issued a Redemption Notice to its investors. The Redemption Notice is attached hereto (without exhibits) as **Exhibit 1**.

17. The Redemption Notice was issued "pursuant to Article VI of the [Operating Agreement]."

18. Defendants each selected "Redemption Choice – A – payment in cash in an amount calculated based on [their] initial capital contribution, plus any additional capital contributions, less any redemption payments made to [them]."

19. On February 2, 2026, Broadstreet sent the attached letter to Defendants. (**Exhibit 2**). Among other things, the letter states:

i. "The investment documents executed by all of the investors and acknowledged in the Compliance Acknowledgement give the Manager broad discretion in the manner in which decisions are made, redemptions are paid and the overall powers involving management." (Ex. 2 at n.2).

ii. "As you all may recall you executed investment documents when you made your investment with Broadstreet that provide the Manager with broad discretion. Broadstreet has not waived or relinquished any of those broad and discretionary powers and may specifically utilize the same in the future if it deems so necessary. Investors should review all investment documents including the private placement memorandum, operating agreement, compliance acknowledgement and data room for a full description." (*Id.* at n.3).

20. On February 25, 2026, Broadstreet sent the attached letter to Defendants. (**Exhibit 3**). Among other things, the letter described the "current … liquidity environment" stating:

> As we previously did throughout the course of our relationship with investors, we will communicate on a regular basis to continue with updates. Also, as previously done, we urge you to review all of your investment documents to understand the process summarized above as this letter is not meant to be a replacement to the detail of all of the prior information you received in the investment documents and related reference materials.

(Ex. 3 at 4).

21. On March 23, 2026, Broadstreet sent the attached letter to Defendants. (**Exhibit 4**). Among other things, the letter states:

> We continue to be optimistic in achieving our goal even though there is presently a great deal of geo-political and financial market turmoil in the world. We do recognize that the overall markets and economy are matters that are outside of our control but again we comfort ourselves in our belief that we own unique assets.
>
> …
>
> As we previously did throughout the course of our relationship with investors, we will communicate on a regular basis to continue with updates. Also, as previously done, we urge you to review all of your investment documents to understand the process summarized above as this letter is not meant to be a replacement to the detail of all of the prior information you received in the investment documents and related reference materials.

(Ex. 4 at 1-2).

22. On April 28, 2026, Broadstreet sent the attached letter to Defendants. (**Exhibit 5**). Among other things, the letter described "current market conditions and impact on asset sales", "Private Equity Specifics" and "Specific Market Discussion" and further states:

> **Exercise of Manager discretion under the Fund documents**
>
> Under Section 2.05(b) of the Operating Agreement, the Company and any Series may:
>
> > "...engage in any activity or transaction that may, in the Manager's discretion, be necessary, suitable or proper to achieve the objective [of the Fund and Series]..."
>
> The PPM further provides, in both the "Withdrawals/Manager Decisions" and "Payment" sections (page 12), that:
>
> > "**Notwithstanding anything else in any Supplement, side letter or any other form of document,** in the event that the Manager determines it necessary, **all withdrawals may be modified or paid back in kind** if the Manager so determines it to be **in the best interest of the Fund** and such decision is left to the **sole and absolute discretion of the Manager**."
>
> These provisions confirm that the Manager may modify the terms of withdrawals, including substituting in-kind distributions for cash, halting payments, etc. . . , where it determines such action to be necessary and in the best interests of the Fund and its investors. No such decision is being made

at this time, but again, since asked this often, the answer is quite simple - - in the event things change, the Manager is authorized to make decisions to adjust to those changes. We certainly would have liked to have all transactions closed as of now, however, we are also realistic as to what it takes to close large business transactions and how many variables are simply not within our control.

Every investor executing these documents acknowledged that they are highly sophisticated, high net worth investors with full understanding of all documents that they signed and further had the opportunity to have all documents reviewed by their own independent investment professionals. We have abided by the documents we have provided to you and will continue to do so.

These clauses are customary in the private investment industry and appropriate and act to protect the investors and the business. In the event that circumstances present themselves wherein the Manager utilizes these provisions, then they will be used exactly in the manner as intended in the agreements signed by all investors and the Manager shall advise you. Again, to reiterate, to date, the Manager has not made such a decision, but the Manager does have the power to do so.

(Ex. 5 at 5-6).

23. On May 14, 2026, Broadstreet sent the attached letter to Defendants. (**Exhibit 6**). Among other things, the letter states:

As previously referenced in our April Update section entitled "Exercise of Manager discretion under the Fund documents" the Manager was granted broad powers and as such, we are not under pressure to accept what we deem unacceptable negotiations as we have the power to modify any supplement, side letter or any other form of document. If the Manager determines it necessary, all withdrawals may be modified or paid back in kind. Such decisions are left to the sole and absolute discretion of the Manager. (See ppm page 12 under "Withdrawals/Manager Decisions" and "Payment" sections as one of many sections/documents granting the manager broad powers).

…

Since we have dealt with many counterparties in the homebuilding arena, we do not feel compelled to be forced into the cash component deal and if necessary, we will cancel any or all of the cash sales transactions and then resume discussions with other parties who expressed interest in our assets and who are competitors to the present parties. Although we had hoped to complete asset sales to satisfy the cash component of our redemption transaction in a timely manner, we also recognize that if the sales do not yield appropriate proceeds, then we are under no pressure to accept the changes now served upon us by our counterparties and we can have their competitors acquire what we believe to be very valuable assets.

…

> According to Pitchbook, which is a leading source of statistics in the private equity market, the distributions to paid in capital (also known as DPI), which reflects the cash returned to investors relative to the capital they placed in private equity has collapsed from a high of receiving almost 2.5x their investment, to now where investors are not receiving any multiple near that (see chart below). Hence, our ability to redeem the overwhelming majority at a premium and then wait until more rational pricing to redeem the last six percent (a minority) of the total redemption is still dramatically better than the overwhelming majority of private equity firms in the market according to the below.

(Ex. 6 at 1-2).

24. Defendants never responded to any of the above letters.

25. On May 22, 2026, Broadstreet sent the attached letter to Defendants. (**Exhibit 7**). Among other things, the letter notified Defendants that "Cash Sales-Process Hits Impasse", again set forth Broadstreet's repeatedly stated "Authority to Complete the Redemption In Kind" and notified Defendants that Broadstreet would be redeeming them in the form of an in kind redemption.

26. Between May 27 and June 5, 2026, despite having never responded to any of Broadstreet's prior letters setting forth that Broadstreet could and may do exactly what it did, *i.e.*, exercise its right to redeem Defendants in kind, Defendants sent Broadstreet demands for cash and stated that if the cash demand was not met by their arbitrary deadlines, they "will proceed with litigation" ("Demand Letters").

27. All conditions precedent to bringing this action have been satisfied, waived or rendered unnecessary due to futility.

## FIRST CAUSE OF ACTION
## (Declaratory Judgment)

28. BSGM incorporates by reference the allegations set forth in all prior paragraphs as if fully as set forth in length.

29. Broadstreet has decided to redeem Defendants in kind.

30. Nonetheless, Defendants sent the Demand Letters and continue to pursue the claims contained therein.

31. There is an existing and actual legal controversy that can be effectively resolved by a declaratory judgment regarding whether Broadstreet may choose to redeem Defendants in kind.

32. BSGM therefore seeks and is entitled to a declaration that Broadstreet may redeem Defendants in kind.

## PRAYER FOR RELIEF

Wherefore, BSGM asks this Court to grant the following relief:

a. A declaration that Broadstreet may redeem Defendants in kind.

b. For an award of allowable costs and expenses.

c. For such other and further relief in BSGM's favor as the Court deems just and proper.

Date: June 6, 2026

**BERKELEY LAW P.A.**

By: *Lorne E. Berkeley*
Lorne E. Berkeley, Esq.
Florida Bar No. 146099
10600 Griffin Road, Suite 104
Cooper City, Florida 33328
Telephone: (954) 719-3484
Lorne@BerkeleyLawFL.com

*Attorneys for Broad Street Global Management LLC*