# EXHIBIT "P"

## DECLARATION OF GREGORY LOVALLO

I, **GREGORY LOVALLO**, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the foregoing is true and correct, that I am over 18 years of age, and that I have personal knowledge of the matters stated herein, except where I expressly state that a matter is based upon information communicated to me or my present understanding of the investments and entities involved:

### I. Background and Introduction to the Investments

1. I became involved in investments associated with Phoenix and L3 through Rich Cardinale and Todd Sanders.

2. My relationship with Mr. Cardinale and Mr. Sanders developed through investment opportunities that were presented to me as part of an ongoing investment relationship.

3. Based upon my communications with them, I understood that Phoenix, L3, and the later BSG Fund investment opportunities being presented to me were connected through overlapping individuals, business relationships, or investment strategies.

4. At a later point, Mr. Sanders introduced me to additional BSG Fund investment opportunities.

5. Among those opportunities were an investment involving shares in **Triller**, which was presented to me as a pre-initial-public-offering, or "pre-IPO," investment, and a separate investment involving a **land-banking transaction**.

6. When these investments were presented to me, I was told, in substance, that they were similar to investment products in which I had previously been involved.

7. I was also told that the individuals or "players" involved were similar, if not the same, as those associated with my prior investments.

8. I understood from these representations that I was not being asked to enter into an entirely new or unrelated investment relationship.

9. Rather, I was led to understand that the investment structure was transitioning to a larger company or broader investment platform.

10. Those representations gave me comfort because they suggested continuity with investments, people, and arrangements with which I was already familiar.

**II. Triller Pre-IPO Investment**

11. Mr. Sanders offered me an opportunity to invest in shares of Triller.

12. The Triller investment was represented to me as a pre-IPO opportunity.

13. I understood that the purpose of the investment was to obtain an ownership interest before Triller became publicly traded or otherwise completed a liquidity event.

14. I understood that the investment had the potential to increase substantially in value if the anticipated transaction or public offering occurred.

15. I relied upon the representations made to me concerning the nature of the opportunity and the people involved when deciding to participate.

16. Since the time of my investment, the Triller investment has not produced the liquidity event, return, or ownership benefit that I expected based upon the representations made to me.

17. To my knowledge, the investment has essentially gone nowhere from my perspective as an investor.

18. I have not received the financial benefit I expected from the Triller investment.

19. I also have not received sufficient clarity concerning when, if ever, I will be able to realize value from that investment.

## III. Land-Banking Investment

20. Mr. Sanders also presented me with an opportunity to participate in a land-banking investment.

21. I understood that my investment would provide me with a financial interest in the underlying land and profit from any potential sale of that land.

## IV. Conversion of the Land-Banking Investment to a Hilton Property

22. Mr. Sanders and BSG offered me the opportunity to move my investment in the land banking deal into a Hilton Element Hotel Opportunity.

23. An additional [redacted] investment was made along with the [redacted] from the land banking opportunity in order to invest in the Hilton Element Hotel

24. Based upon the representations made to me at the time I invested, I expected that successful development of the property would result in continuing distributions or ownership benefits.

25. I understood that, once the hotel and related operations became functional, I would benefit from my percentage interest in the revenue generated by the project.

26. Despite the property apparently reaching a stage at which it was developed into a Hilton property, I have not received the ownership interest or continuing revenue participation that I understood I was purchasing.

27. I have not received the expected percentage of hotel revenue.

28. I have not received the expected percentage of bar or restaurant revenue.

29. I have not received any meaningful continuing ownership benefit consistent with what I understood had been represented to me.

30. From my perspective, the underlying project appears to have advanced or changed substantially while my promised economic participation has not materialized.

**V. Distributions and Expected Ownership**

31. My understanding of these investments was that investors would receive percentage distributions when development was completed or when a liquidity event occurred.

32. Once the investments came to fruition, I understood that I would receive a percentage distribution by way of continuing ownership interests.

33. The continuing ownership interests I expected have not materialized.

34. From my perspective, the ownership component of the investment is effectively nonexistent at this time.

35. I have not received documentation demonstrating that I currently possess the continuing percentage ownership interests I understood I would receive.

36. I have not received regular revenue distributions consistent with ownership in an operating hotel, restaurant, bar, or related business.

**VI. Confusion Concerning Ownership and Custody of Investments**

37. In addition to the Triller and land-banking investments, I became involved with other investment products associated with the same general group of people or entities.

38. Over time, I have become increasingly confused about which company, entity, fund, or individual actually holds certain investments.

39. It has not always been clear to me whether particular investments belonged to L3, BSG Fund, another affiliated company, or another entity altogether.

40. The transitions among entities and investment structures have made it difficult for me to determine precisely where my investments are held.

41. I have also found it difficult to determine which entity is responsible for honoring the obligations originally represented to me.

42. At the time I invested, I did not understand that ownership and responsibility for the investments would later become so difficult to identify.

43. Had I understood that there could be significant uncertainty concerning which entity actually held my investments or was responsible for my ownership interests, I would have evaluated the investments differently.

## VII. Nature of the Representations Made to Me

44. The investments were presented to me as part of a continuing relationship rather than isolated or unrelated opportunities.

45. I relied upon the fact that people I knew from prior investments remained involved or were represented to remain involved.

46. I understood that I was essentially transitioning from earlier investments with Phoenix and L3 into opportunities connected to a larger business or investment structure.

47. I did not understand that this transition would result in uncertainty concerning the location, ownership, or enforceability of my investments.

48. I also did not understand that projects could come to fruition without my receiving the continuing ownership interests that had been represented to me.

49. Had I been told that I might receive only limited distributions and ultimately have no meaningful ownership participation, I would not have understood the investment opportunity in the same manner.

50. The promise of continuing ownership and revenue participation was a material part of my decision to invest.

## VIII. Lack of Documentation and Passage of Time

51. Many of the communications concerning these investments occurred a significant period of time ago.

52. Because of the passage of time, I no longer have access to all of the text messages or other communications that occurred when the investments were initially presented to me.

53. I have attempted to locate older text messages, but I have not been able to locate all of them.

54. Despite the passage of time, I recall the substance of the investment arrangements communicated to me.

55. My understanding was that I would receive percentage distributions related to some of these investments until the investments or projects came to fruition.

56. Thereafter, I understood that I would possess a continuing percentage ownership interest.

57. In the case of the hotel project, that continuing interest was represented to include participation in hotel, bar, restaurant, and related operating revenues.

58. That understanding was central to my decision to provide money for the investments.

## IX. Reliance and Harm

59. I relied upon representations made by Mr. Sanders and others concerning the nature and continuity of the investment opportunities.

60. I relied upon representations that the investments were similar to investments with which I was already familiar.

61. I relied upon representations that substantially the same people or business relationships remained involved.

62. I relied upon representations that the transition was essentially into a larger company or investment structure.

63. I relied upon the representation that where applicable I would receive distributions while projects progressed.

64. I also relied upon the representation that I would receive continuing percentage ownership after those projects came to fruition.

65. Had I known that I would receive only limited distributions and no meaningful continuing ownership interest, I would have made different investment decisions.

66. Had I known that I would later be unable to clearly identify which entity held certain investments, I would have evaluated the risks differently.

67. Had I known that the Triller investment could remain unresolved for such an extended period without producing the anticipated liquidity or value, I would have evaluated that investment differently.

68. As a result of these circumstances, I have been deprived of distributions, ownership benefits, liquidity, and investment value that I reasonably expected based upon the representations made to me.

69. I make this declaration based upon my personal knowledge, my recollection of communications with Mr. Sanders and others involved with these investments, and information subsequently communicated to me concerning the status of the investments.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 12, 2026, in Essex County, State of New Jersey.

Gregory Lovallo