# EXHIBIT "R"

# DECLARATION OF ROBERT T. HARPER

I, **ROBERT T. HARPER**, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the foregoing is true and correct, that I am over 18 years of age, and that I have personal knowledge of the matters stated herein, except where I expressly state that a matter is based upon communications, documents, presentations, or other information provided to me:

## I. Background and Investment Objectives

1. I am 72 years old.

2. I am completely blind as a result of a health condition.

3. After selling real estate, I was looking for investment opportunities that could provide residual income and help support me in retirement.

4. Because of my age and circumstances, I was not looking for speculative or long-term investments.

5. I was particularly interested in investments that could provide regular quarterly income while still allowing me access to my principal within a reasonable period of time.

6. I became involved with Broadstreet Global Fund, which I refer to in this declaration as "Broadstreet" or "BSGF," through **Brandon Leon of Phoenix Financial**.

7. Mr. Leon had been cold calling me for some time before I ultimately invested.

8. After I had additional money available from the sale of real estate, Mr. Leon began sending me information concerning Broadstreet through telephone calls and email communications.

9. I specifically informed Mr. Leon that I was not interested in a long-term investment.

10. I explained that, because of my age, I was looking for an investment that would provide regular quarterly distributions and reasonable access to my money.

## II. Representations Concerning Broadstreet's Real Estate Investment

11. In or about February 2024, Mr. Leon emailed me information concerning a Broadstreet investment opportunity.

12. He described Broadstreet as a private equity fund involved in real estate development.

13. He represented that the investment involved development activity in or around **Greenville, South Carolina**, which he described as one of the fastest-growing cities in the area.

14. Mr. Leon represented that the investment would pay approximately **14.6% interest**, with distributions paid quarterly.

15. He also represented that I would have access to my money after approximately **six months**.

16. These representations were important to me because they directly addressed the two things I had emphasized: regular income and relatively short-term access to my principal.

17. Mr. Leon also told me that I should attend an informational Zoom meeting concerning the investment opportunity.

18. I understood that the meeting would be hosted or presented by **David Feingold** and **Joseph Baldassarra**.

## III. March 12, 2024 Zoom Presentation

19. On or about March 12, 2024, I attended the Zoom presentation concerning the Broadstreet investment.

20. During the presentation, Broadstreet representatives discussed the real estate and infrastructure investment opportunity.

21. The presentation described the investment as an attractive and successful opportunity.

22. The Zoom presentation included photographs or visual depictions of the development area.

23. Broadstreet representatives discussed how the land was developed for homebuilders.

24. They also discussed the represented **14.6% annual return**, with distributions paid quarterly.

25. The presentation made the investment appear legitimate, established, and financially attractive.

26. Based upon the information provided by Mr. Leon and the representations made during the Zoom meeting, I believed I was investing in a genuine real estate and infrastructure business that would generate regular income.

27. I relied upon those representations when deciding to invest.

**IV. My Initial [redacted] Investment**

28. On or about March 21, 2024, I wired [redacted] to Broadstreet Global Fund.

29. I made this investment based upon the representations concerning the real estate development business, the 14.6% return, quarterly distributions, and my expected ability to access my funds after approximately six months.

30. On or about July 1, 2024, I received my first distribution in the amount of approximately **$3,657.50**.

31. Receiving that distribution reinforced my belief that the investment was operating in the manner that had been represented to me.

32. I understood that I would continue receiving quarterly distributions while my money remained invested.

**V. My Additional [redacted] Investment**

33. After receiving the initial distribution and continuing to rely upon the representations made to me, I invested additional funds with Broadstreet.

34. On or about July 30, 2024, I wired an additional [redacted] to Broadstreet Global Fund for the real estate infrastructure investment.

35. My total principal investment with Broadstreet was therefore approximately [redacted]

36. I continued receiving quarterly distributions as expected for a period of time.

37. Those payments further reinforced my belief that the investment was legitimate and operating successfully.

38. I continued to rely upon the expectation that I could redeem my investment and recover my principal when needed.

39. The last quarterly distribution I received was in or about **November 2025**.

**VI. My October 2025 Cash-Redemption Election**

40. On or about October 24, 2025, I received and signed a DocuSign concerning redemption of my Broadstreet investment.

41. I selected **Option A Cash Redemption**.

42. My intention was clear: I wanted my investment returned to me in cash.

43. At the time I made that election, I was not told that the November 2025 distribution would be my final quarterly distribution.

44. I raised the issue of interest accruing on my money while Broadstreet continued holding it during the redemption process.

45. Mr. Leon told me that I would receive approximately **4% interest** on the funds while I waited for my cash redemption.

46. He further told me that the cash-redemption process could take up to approximately six months.

47. Based upon that representation, I understood that my cash redemption should be completed by approximately the **end of May 2026**.

48. Mr. Leon repeatedly indicated to me that the cash redemption would be coming and, on multiple occasions, stated in substance that it could arrive "any day."

49. I relied upon these assurances and continued expecting Broadstreet to return my principal in cash.

## VII. November 2025 Cash-Redemption Documentation

50. On or about November 14, 2025, I received another DocuSign from Broadstreet relating to redemption of my investment.

51. I signed the document.

52. Once again, I selected **Option A Cash Redemption**.

53. I did not select stock.

54. I did not agree to substitute stock for cash.

55. My election remained cash redemption.

56. I understood that Broadstreet had received and accepted my election and would return my money within the represented redemption period.

## VIII. My Attempts to Obtain Updates

57. After electing cash redemption, I repeatedly attempted to contact Mr. Leon for updates concerning when I would receive my money.

58. I called him multiple times.

59. Frequently, I was unable to reach him.

60. On many occasions, he did not return my calls.

61. I became increasingly concerned because I had invested substantial funds and had been told that my cash redemption would be completed within approximately six months.

62. I also contacted Mr. Leon's office to complain about the lack of communication.

63. Despite those efforts, I still frequently did not receive a return call.

64. On occasions when I was able to speak with Mr. Leon, he continued telling me, in substance, that my money would arrive "any day now."

65. Those statements caused me to continue believing that payment was imminent.

66. I was not provided with a definite payment date, a payment schedule, or a reliable explanation for the delay.

**IX. May 2026 and Broadstreet's Refusal to Pay Cash**

67. By approximately May 2026, the six-month period I had been told to expect for cash redemption had expired or was about to expire.

68. I expected Broadstreet to honor my Option A election and return my approximately [redacted] principal in cash.

69. Instead, Broadstreet issued an update indicating that it would not honor the cash-redemption election in the manner originally represented.

70. Broadstreet instead indicated that investors would receive an **in-kind distribution of stock**.

71. I understood that Broadstreet was representing that the stock would have a value of approximately **three times my original investment**.

72. That was not the option I had selected.

73. I had twice selected cash redemption.

74. I did not agree to accept speculative or restricted stock instead of cash.

75. I had made clear from the beginning that I was not looking for a long-term investment.

76. I had specifically invested because I was told that I would receive quarterly income and would have access to my principal within a relatively short period of time.

77. Replacing cash with stock fundamentally changed the nature of the investment and redemption arrangement that had been presented to me.

**X. Cash and Stock Are Not Equivalent for My Needs**

78. Cash and restricted or otherwise illiquid stock are not equivalent to me.

79. Cash provides immediate liquidity and can be used for living expenses and retirement needs.

80. Stock may fluctuate in value and may be subject to restrictions on when or how it can be sold.

81. A projected value of three times my investment does not mean that the stock can actually be sold for that amount.

82. It also does not provide me with the certainty of receiving my principal back.

83. At 72 years old and completely blind, I do not want to wait years for speculative stock to possibly become liquid or valuable.

84. I invested because I wanted stable residual income and access to my principal.

85. I did not invest with the expectation that my cash-redemption rights could later be replaced by stock.

86. I never agreed to assume that additional risk.

**XI. Reliance on the Representations Made to Me**

87. I relied upon Mr. Leon's representations when deciding to invest with Broadstreet.

88. I relied upon the representation that the investment involved real estate and infrastructure development.

89. I relied upon the representation that the investment would pay approximately 14.6% annually with quarterly distributions.

90. I relied upon the representation that I would have access to my money after approximately six months.

91. I also relied upon the representations made during the March 12, 2024 Zoom presentation by Broadstreet representatives.

92. I relied upon the photographs, descriptions of the development operations, and explanations concerning Broadstreet's work with homebuilders.

93. When I later elected cash redemption, I relied upon the representation that my funds would be returned within approximately six months.

94. I relied upon Mr. Leon's representation that I would receive approximately 4% interest on my money while waiting for redemption.

95. I also relied upon his repeated statements that my redemption payment would be coming soon or "any day."

96. Had I known from the beginning that my principal could remain unavailable for an extended period of time, I would have evaluated the investment differently.

97. Had I known that Broadstreet could later refuse to honor my cash-redemption election and attempt to substitute stock, I would not have understood the investment to satisfy my stated retirement objectives.

**XII. Effect on Me**

98. I invested approximately [redacted] of my funds with Broadstreet.

99. These funds were important to my retirement planning and financial security.

100. I expected those funds to generate regular residual income and to remain reasonably accessible to me.

101. The cessation of the quarterly distributions in November 2025 deprived me of income that I had expected to continue receiving.

102. Broadstreet's failure to return my principal when represented has caused me significant concern and uncertainty.

103. The lack of communication from Mr. Leon made the situation even more stressful.

104. Because I am completely blind, I necessarily depend upon others and upon accurate verbal and written communications when making financial decisions.

105. I relied upon the information that was presented to me concerning Broadstreet and my ability to redeem my investment.

106. I now find myself without the quarterly income I expected and without access to the approximately [redacted] principal I elected to redeem.

107. This is not the investment arrangement that was represented to me when I invested.

**XIII. My Continuing Cash-Redemption Election**

108. My decision to select Option A was deliberate.

109. I selected Option A on or about October 24, 2025.

110. I again selected Option A on or about November 14, 2025.

111. I did not change my election.

112. I did not elect stock.

113. I did not authorize anyone to change my election from cash to stock.

114. I do not consent to accepting stock as full satisfaction of Broadstreet's obligation to return my money.

115. I continue to request the cash redemption that I elected.

116. I make this declaration based upon my personal knowledge, my communications with Mr. Leon, the Broadstreet communications and DocuSign documents I received, and my recollection of the March 12, 2024 investor presentation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2026, in Bexar County, State of Texas.

Robert T. Harper