# EXHIBIT "Y"

# DECLARATION OF HOWIE MANN

I, **HOWIE MANN**, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the foregoing is true and correct, that I am over 18 years of age, and that I have personal knowledge of the matters stated herein, except where I expressly state that a matter is based upon information communicated to me or documents and correspondence I received:

## I. Introduction to the Investment

1. I was introduced to the investment opportunity through a good friend of mine, **Leon Manoff**.

2. Mr. Manoff had previously invested and, based upon what he told me, had a positive experience with the investment.

3. I understood that Mr. Manoff had successfully exited his investment before **David Feingold** sold his firm or before changes subsequently occurred involving the business.

4. Because Mr. Manoff was someone I knew and trusted, his prior positive experience gave me confidence in considering the investment opportunity.

5. In December 2022, Mr. Manoff referred me to **Bernard Jasmin**, a partner at Broadstreet.

6. I subsequently communicated with Mr. Jasmin concerning the investment.

7. Mr. Jasmin encouraged me to invest and represented the investment as providing an attractive rate of return.

[redacted]

## II. Representations Concerning the Return on My Investment

9. Mr. Jasmin represented to me that my investment would generate a return of approximately **14.9%**.

10. Based upon my communications with him, I understood that I would receive regular interest or dividend payments associated with that represented return.

11. The return that was represented to me sounded very attractive.

12. The prospect of receiving regular income was an important reason I decided to invest.

13. I relied upon the representations made to me concerning the expected return when I sent in my $80,000 investment.

14. After investing, I did receive some distributions.

15. In total, however, I have received only approximately [redacted] **in dividends or distributions**.

16. I have not received the full financial benefit that I understood would result from the investment.

17. I have also not received the return of my original [redacted] principal.

**III. Redemption and Liquidation Election**

18. At a later point, I, like other investors, was offered a choice concerning what would happen to my investment.

19. I understood that one option would allow me to convert my investment into stock in a new company.

20. I understood that the other option would allow me to liquidate my investment and receive my [redacted] **principal back in cash**.

21. I chose the liquidation option.

22. My decision was straightforward: I wanted my original investment returned to me.

23. After I made my liquidation election, I was asked to provide my banking information so that the funds could be wired to me.

24. The request for my banking and wire information reinforced my understanding that the company intended to return my [redacted] in cash.

25. I provided the requested banking information in anticipation of receiving the liquidation proceeds.

26. At that time, I had every reason to believe that my liquidation request would be honored.

**IV. Reversal of the Liquidation Option**

27. After I selected liquidation and provided the requested banking information, I was subsequently informed that liquidation would no longer be available.

28. This was contrary to my understanding when the options were originally presented to me.

29. I had specifically selected liquidation because I wanted my [redacted] returned.

30. I did not initially choose the stock option.

31. I was therefore concerned when I learned that the cash-liquidation option I had selected would not be honored.

32. I had already been asked for the banking information necessary to wire the funds to me, which made the later reversal particularly troubling.

33. I did not understand how the company could first offer liquidation, accept my election, request my wire information, and then later state that liquidation was no longer an option.

**V. My Agreement to Accept Stock**

34. After being told that I would not receive the liquidation I had elected, I became concerned that I might otherwise lose my investment.

35. Faced with that situation, I agreed to accept the stock transfer instead.

36. My agreement to accept stock was not my original preference.

37. I agreed to the stock because I believed it might be the only remaining way to preserve some value from my [redacted] investment.

38. I would have preferred to receive the cash liquidation I originally selected.

39. I expected that, after agreeing to the stock alternative, the promised shares would actually be transferred to me.

40. That did not occur.

41. To my knowledge, the stock transfer that I was told would occur was never completed.

42. I therefore did not receive the [redacted] cash liquidation I originally elected, nor did I receive the stock that was subsequently offered as an alternative.

## VI. My Growing Concerns

43. The failure to honor either the liquidation election or the later stock transfer caused me to become seriously concerned about the people and entities involved.

44. Those events confirmed suspicions I had begun to develop concerning how my investment was being handled.

45. I could not understand why I would be offered a cash redemption, asked to provide banking information for that redemption, denied the cash redemption, and then also fail to receive the stock that was supposed to replace it.

46. From my perspective, the representations made to me kept changing while I continued to be deprived of access to my original investment.

47. I became concerned that I had been misled about both my ability to liquidate my investment and my ability to receive replacement stock.

48. These circumstances caused me to lose confidence in the individuals handling my investment.

**VII. My Efforts to Investigate**

49. After the promised liquidation and stock transfer both failed to occur, I began researching the matter independently.

50. I searched online for information concerning the company, the individuals involved, and other investors who may have experienced similar problems.

51. I also looked for information concerning potential litigation or a class action involving the investment.

52. I took these steps because I was concerned that I might not otherwise recover my money.

53. Before reaching this point, I had expected that the company would simply honor the options and representations it had made to investors.

54. My decision to investigate possible legal remedies was prompted by the failure to return my money and the failure to provide the promised stock.

**VIII. Correspondence and Documentation**

55. During my investment relationship, I received correspondence and other communications concerning my investment, distributions, liquidation options, and proposed stock transfer.

56. I have preserved and previously provided the correspondence and documents that I was able to locate concerning these matters.

57. Those documents reflect communications I received relating to the investment and the subsequent attempts to address what would happen to my funds.

58. I believe those communications are important because they provide additional context concerning the representations made to investors and the sequence of events surrounding the proposed liquidation and stock transfer.

## IX. Reliance and Financial Harm

59. I relied upon the representations made to me when I invested my [redacted].

60. I relied upon the positive experience reported to me by Mr. Manoff when deciding to consider the investment.

61. I relied upon Mr. Jasmin's representations concerning the anticipated return.

62. I also relied upon the representation that I would be able to liquidate my investment and recover my $[redacted] principal when that option was offered.

63. The company's request for my banking and wiring information caused me to believe that the cash payment was actually going to be made.

64. Had I known that the liquidation option would later be withdrawn, I would have evaluated my situation differently.

65. Likewise, when I agreed to accept stock instead, I relied upon the representation that the stock would actually be transferred to me.

66. Had I known that neither cash nor stock would be delivered, I would not have agreed to the arrangement as it was presented.

67. I have received approximately [redacted] in distributions, but I remain deprived of my $80,000 principal and the investment value I expected to receive.

68. The uncertainty surrounding my investment has caused me significant concern and frustration.

69. I have been forced to seek legal assistance because the representations made to me concerning the disposition of my investment have not been honored.

70. I make this declaration based upon my personal knowledge, my recollection of communications with Mr. Jasmin and others involved with my investment, and the correspondence and investment communications that I received.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 11, 2026, in Nassau County, State of N.Y.

Howie Mann